UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
LAFARGE CANADA INC. and LAFARGE
NORTH AMERICA INC.,

                       Plaintiffs,

                       v.                            15-CV-8957 (RA)

AMERICAN HOME ASSURANCE COMPANY,
AIG INSURANCE COMPANY OF CANADA,
and LEXINGTON INSURANCE COMPANY,

                       Defendants.
------------------------------------------------------------x

## DECLARATION OF JOHN SHELONKO

1. I was employed by Plaintiff Lafarge North America Inc. ("LNA") from February 22, 1999 until June 30, 2016. During that time, I held the successive positions of assistant risk manager, director of risk management, and vice president of risk management.

2. Since July 1, 2016, I have been engaged by LNA as a consultant.

3. Plaintiff Lafarge Canada Inc. ("LCI"), a Canadian corporation, is a wholly owned subsidiary of LNA. I sometimes refer to LCI and LNA collectively as "Lafarge."

4. My roles as an employee and consultant for LNA have also included responsibility for LCI.

5. From before 2001 through 2012, LCI's headquarters and principal place of business were in Montreal in the province of Quebec, Canada.

6. Since 2013, LCI's headquarters and principal place of business have been in Mississauga in the province of Ontario, Canada.

7. LNA is a Maryland corporation. From 2001 to 2012, LNA's headquarters and principal place of business were in Virginia. In 2012, LNA's headquarters and principal place of business moved to Chicago, where they have been located since.

8. During my employment with LNA, my responsibilities included procuring insurance policies for LNA and LCI and managing claims under insurance policies issued to LNA and LCI.

9. As part of my engagement as a consultant for LNA, my responsibilities include managing claims under insurance policies issued to LNA and LCI.

10. During the time that each of the Primary and Umbrella Policies[1] was issued, the domicile of LCI was the province of Quebec, Canada.

11. During the time that each of the Primary and Umbrella Policies was issued, LCI was a wholly owned subsidiary of LNA.

12. All the Primary Policies and two of the Umbrella Policies were issued to LCI, which is identified as the "Named Insured" in those policies.

13. As a wholly owned subsidiary of LNA, LCI is a "Named Insured" under the Umbrella Policies issued to LNA.

14. All claims for defense or indemnity costs paid by American Home and AIG Canada under the Primary Policies are ultimately reimbursed by Lafarge. This arrangement is commonly referred to as "fronting." Policies under which payments are ultimately reimbursed by the insured, such as the Primary Policies, are commonly referred to as "fronting" policies.

---

[1] As used in this declaration, the terms "Primary Policies" and "Umbrella Policies" have the same meaning as set forth in Lafarge's memorandum of law in support of its motion for summary judgment.

15. From 2001-12, LCI and LNA obtained umbrella and excess coverage (the "Excess Policies") above the Primary Policies from 2001-04 and above the Umbrella Policies from 2004-12. LCI is a "Named Insured" under the Excess Policies. None of the Excess Policies is at issue in this litigation.

16. I have been responsible for managing LCI and LNA's claims for coverage for LCI's potential liability in mass civil litigation arising from alleged construction defects pending before the Superior Court of Quebec in the judicial district of Trois-Rivières, Quebec, Canada (the "*Trois-Rivières* Litigation") since those claims were first noticed in November 2011.

17. I had no knowledge of potential property damage arising from use of aggregate from the B&B Quarry in concrete for which LCI or LNA would be subject to a claim until November 2011, when two LCI employees and one former employee were subpoenaed and deposed in the *Trois-Rivières* Litigation.

18. I am not aware of anyone else at Lafarge having such knowledge before November 2011.

19. Lafarge has incurred and will continue to incur legal fees and costs for its defense of the claims against it in the *Trois-Rivières* Litigation.

20. Pursuant to the fronting arrangement applicable under the Primary Policies, Lafarge's legal fees and costs for the *Trois-Rivières* Litigation are paid by a third party administrator ("TPA"). The TPA is reimbursed by AIG for those costs, and AIG is reimbursed by a Lafarge affiliate.

21. Lafarge is among the largest manufacturers and suppliers of cement in Canada and North America.

22. Before April 2006, LCI sold cement to Béton Laurentide ("Laurentide"), a ready-mix concrete supplier.

23. For some but not all of the properties at issue in the *Trois-Rivières* Litigation, LCI sold the cement used in the concrete that also contained B&B Quarry aggregates.

24. During the time that LCI sold cement used in the concrete that also contained B&B Quarry aggregates, LCI owned approximately 30% of Laurentide.

25. Attached as Exhibit 1 is a true and correct copy of a notice of potential claims against LCI I sent November 15, 2011 to LCI and LNA's insurers, including the AIG defendants in this action.

26. Attached as Exhibit 2 is a true and correct copy of a letter I sent on October 9, 2015 to Melody Mahla of AIG Claims.

27. Attached as Exhibit 3 is a true and correct copy of a letter I received from Ms. Mahla on November 2, 2015.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed on June 9, 2017, in Fairfax, VA.

_____
John Shelonko